ROBERT PERRY and another *v.* THE COMMISSIONERS FOR THE LIQUI-DATION OF THE CLINTON AND PORT HUDSON RAIL ROAD COMPANY.

Action by certain creditors of a company against the commissioners appointed for the liquidation of its affairs, claiming a privilege on its property, and praying that it may be sold for the payment of their debts. It appeared from different acts of the Legislature, that the State claimed a privilege on the property of the company, and to have subseqently become, by a forfeiture, declared by an act of the Legislature, the actual owners of the property, which act directed the treasurer of the State to sell the same. No citation or other notice of the proceedings was given to the governor, treasurer, attorney general, or district attorney, but judgment was rendered declaring the act pronouncing the forfeiture unconstitutional, the State not to be the owner of the property, and ordering it to be sold by the commissioners, reserving, for a future decision, the question of the privileges of the different creditors. On appeal: *Held,* that the State not having been cited, nor notified of the proceedings, the judgment must be reversed, and the case remanded for a new trial, after the State shall have been notified through the proper officers.

APPEAL from the District Court of East Feliciana, *Johnson, J.*

*A. M. Dunn,* for the plaintiffs.

*Muse and Merrick,* for the appellants.

GARLAND, J. A reference to 2 Robinson, 218, will show the original character of this case, and the grounds upon which the claim is based. After the cause was remanded for a new trial, and before it came on for trial, proceedings were instituted (un-

der the provisions of an act of the Legislature, entitled "An act to preserve the credit of the State," approved March 26th, 1842.—Acts 1842, p. 460, § 2) by the State against the Clinton and Port Hudson Rail Road Company, for the purpose of having its charter forfeited, which was decreed, and the judgment was affirmed in this court—2 Robinson, 307; 4 Robinson, 445. The defendants, Saunders and Fluker, were appointed commissioners, for the purpose of liquidating the affairs of the company, and entered upon the discharge of their duties. In the course of the year 1843, these commissioners entered into a compromise with the plaintiffs, by which the amount to be paid them was settled, and a compensation of a certain amount arranged. It was also agreed that the compromise should "not in any way deprive the plaintiffs aforesaid of their mortgage and privilege as contractors for the construction of the Clinton and Port Hudson Rail Road, until the debt due them is finally paid, or a release hereafter made by them." This compromise was homologated, and made the judgment of the District Court; and, on an appeal, affirmed by this court. See 7 Robinson.

In March, 1839, an act was passed by a constitutional majority of both branches of the Legislature, entitled "An act to expedite the construction of the Clinton and Port Hudson Rail Road," by which the State agreed to loan the company its bonds for $500,000, payable in ten, twenty, and thirty years, bearing interest at the rate of five per centum per annum, upon condition, that "the company shall bind itself to pay the principal and interest of the bonds" to be issued and loaned. To secure the payment of these bonds and interest, it was enacted that the company shall mortgage, or hypothecate, in favor of the State, the capital stock of the same, together with all the property, moveable and immovable, and slaves belonging to the same; and shall also subrogate the State to all the mortgages which may have been executed in favor of the institution by each individual stockholder, both under the original and amended charter  And it was further enacted, "that in case said bonds and the interest thereon are not punctually paid, according to the provisions of this act, *the rail road constructed by said company* shall, by the mere failure so to pay said bonds

and the interest thereon, *and the payment thereof by the State,* become the property of the State; and the said company shall still be bound to pay the principal and interest of said bonds; and the said rail road shall revert back to said company on the payment of the bonds, if paid within five years after maturity;" and the State may take such other steps as may be necessary to its indemnity, in case the company shall not pay the bonds and interest. See acts of 1839, pp. 214, 216, ss. 2, 4. In the month of June, 1839, an attorney in fact of the Rail Road Company appeared before a notary public in New Orleans, to execute the pledge, or hypothecation, required by the act of the Legislature; and in the authentic act then passed is recited and stated what the Legislature had proposed, and that three-fourths in number and amount of the stock holders of the company had accepted the propositions, and had, in the act of acceptance, given to the board of directors "the power to comply with all the requisitions of said act of the Legislature, and, among others, *to pledge* to the State of Louisiana the capital stock of said company, together with all the property, moveable and immovable, and slaves belonging to the same, and to subrogate the said State of Louisiana to all mortgages which may have been executed in favor of said institution, by each individual stock holder, both under the original and amended charter; being seven hundred and fifty thousand dollars in amount, as the whole is set forth in the second section of the said legislative act." The foregoing is the authority conferred on the directors by the stock holders. We will now state what the agent of the directors, and the officers of the State, did. The act proceeds: "Now, therefore, for the purpose of accomplishing the object or objects contemplated by the aforesaid legislative act, and especially for the purpose of obtaining the bonds of the State of Louisiana, signed by the governor of this State, and counter signed by the treasurer thereof, to the amount of five hundred thousand dollars, as provided for in the third section of said legislative act, he, the said James H. Muse, in his aforesaid capacity, does hereby. for and in the name and in behalf of the Clinton and Port Hudson Rail Road Company, and for and in the name of the President and Directors of said Com-

pany, by virtue of the authorisation in him vested as aforesaid, specially pledge to the State of Louisiana, the capital stock of the said Clinton and Port Hudson Rail Road Company, together with all the property, moveable and immovable, and slaves, now belonging thereto, *or which in future shall or may belong thereto;* hereby pledging to the said State the rail road belonging to said company as far as the same is now constructed, and the whole extent of the same when fully completed; and also the whole of the land upon which the said rail road is constructed, and will be found to be constructed when finished; and likewise all and every matter, thing, property and appurtenance thereto attached, and thereunto belonging, or in any wise appertaining." The act then proceeds to subrogate the State to the mortgages executed by the stock holders, describing them. It contains other stipulations not now necessary to state.

In the month of March, 1841, the interest on the bonds loaned by the State not having been paid, the Legislature passed an act entitled " An act to protect the credit of the State," in the preamble to which, a brief statement is made of their transactions with the Clinton and Port Hudson Rail Road Company; and it is said that " a portion of the first instalment of the interest on said bonds is past due and unpaid, and the company is unable to pay the same;" it is therefore enacted, that the state treasurer pay such portion of the interest on said bonds as may remain due; and also, "that by virtue of the second and fourth sections of the act aforesaid, the said road, *with all the machinery, fixtures, slaves and appurtenances thereunto belonging, or in any wise appertaining,* be, and they are hereby declared to be forfeited to the State," reserving to the company the right of redeeming the same in five years. Other provisions are made in relation to the disposition of the revenues, any excess of which over the expenses, is to be applied to the interest of the bonds; and, finally, the corporation is made the agent of the State, for the purpose of administering the affairs of the company, so long as the State " shall retain the ownership, or control of the premises." Acts of 1841, pp. 74, 75, ss. 1, 2.

In 1842–3, by the proceedings before stated, the charter of the company was forfeited, and the defendants were appointed commissioners. In the month of March, 1844, the Legislature, without repealing the law of 1842, or abolishing the office of commissioners under it, passed an act directing the treasurer of the State to take the rail road, engines, fixtures and other things belonging to it, together with certain lots, lands, slaves and other property, out of the hands of the commissioners, and to sell the whole in mass, on a credit of six, twelve, eighteen and twenty-four months, the price to be secured by endorsed notes, or discharged in the obligations of the State.

In September, 1844, no motion having yet been made to sell the property in the hands of the commissioners to pay the debts, the plaintiffs presented their petition, setting forth their original contract with the company to construct a part of the rail road; also the institution of a suit to recover the amount owing to them, the forfeiture of the charter of the corporation, their compromise with the commissioners, and its homologation by the court, and its being made the basis of a judicial decree. They allege that they have requested the said commissioners to pay them their debt, but in vain; that they have requested them to sell the property and rail road in their possession, but that they have refused to do so, alleging that said rail road belongs to the State, having been forfeited by an act of the Legislature, and that the state treasurer has, by law, been directed to sell said rail road, and to place the proceeds of the sale in the treasury. The petitioners then allege, that said act of the Legislature declaring the rail road, and other property to be forfeited, is null and void, inoperative and unconstitutional, as is also the act taking away from the commissioners the property, and ordering it to be sold by the treasurer; that the act declaring the road to have been forfeited is unilateral, made without the consent of the corporation, and not in the ordinary course of law. They further insist that, if the act declaring the rail road forfeited, has vested any title in the State, that then they have a higher privilege than the State, and have a right to cause the road to be sold to pay their debt. That the commissioners are alone authorised to administer the affairs of the aforesaid corpo-

ration, to sell the rail road and other property, and to distribute the proceeds of the sale under the order of the court, according to the rank and privilege of its creditors.

The petitioners pray that the commissioners be ordered to pay them their debt, amounting to upwards of twenty thousand dollars, with interest at ten per cent per annum, according to their judgment, or that they be ordered to sell according to law the Port Hudson and Clinton Rail Road, and apply so much of the proceeds thereof, as shall be sufficient to satisfy their debt, with interest.

The commissioners, for answer, deny generally the allegations of the petition, and aver that the State claims a superior right, both of privilege and ownership, over said rail road, against all persons whatsoever, by virtue of several acts of the Legislature, and by the act of mortgage and pledge executed by said rail road company in the year 1839, and recorded prior to the act of mortgage and privilege in favor of the petitioners. They further say, that the treasurer of the State has, under the 6th section of the act of the Legislature, approved March 25th, 1844, entitled " An act providing for the adjustment and liquidation of the debts proper of the State, and for other purposes," advertised, among other things, said rail road for sale on the 20th of December, 1844, as will be made to appear by his advertisement annexed; wherefore they pray that the demand of the petitioners be rejected.

On the trial of the case, the petitioners gave in evidence the contract, which, with Boatner and others, they had made with the company, to construct a certain portion of the road. It is an authentic act, passed before the act of mortgage in favor of the State, but not recorded until long after that mortgage was. They produced the compromise made with the commissioners, and the judgment rendered thereon, liquidating the amount of their demand, and recognising their privilege as undertakers of the work. They show the appointment of the commissioners, and their refusal to sell the property; also the advertisement of the state treasurer offering the property for sale.

The commissioners produced the act of mortgage given by

the Clinton and Port Hudson Rail Road Company to the State, in the month of June, 1839 ; also a suit instituted by that corporation, subsequently to the act of the Legislature of 1841, declaring the rail road and other property forfeited, in which it is alleged that the corporation is the agent of the State, which is the owner of all the property, and an injunction is asked on that ground to arrest certain creditors, who were proceeding under executions to seize the property, as belonging to the corporation.

Neither the Governor of the State, the treasurer, the attorney general, nor the attorney for the district was notified of any of these proceedings, so far as the record informs us. The commissioners alone were before the court, which decided that the forfeiture declared by the act of 1841 was of no effect, and that the commissioners, by virtue of their appointment, acquired a right to administer the property ; that the rail road and all the other property and effects, are legally in their possession, and that no subsequent legislation can deprive them of that right ; and that they are the representatives of the State, and of all the creditors. As to the question of priority of privilege, the judge said it was not necessary to decide it then, yet he intimates an opinion favorable to the petitioners, but postpones a final decree until a tableau of distribution shall be filed. It was, therefore, adjudged, that the commissioners proceed to sell, at auction, after thirty days notice, the Clinton and Port Hudson Rail Road, and, as soon thereafter as practicable, to file a tableau distributing the proceeds of the sale according to law. From this judgment the defendants have appealed.

The statement of the facts shows the State to be a creditor of the Clinton and Port Hudson Rail Road Company, for more than half a million of dollars; to secure the payment of which debt, it not only claims to have a mortgage and privilege superior to all others, but claims to be the actual owner of the rail road, on which the plaintiffs allege that they have a privilege, and by virtue of which they claim to have it sold and their debt paid. The constitutional validity of different acts of the Legislature is assailed, and an interpretation of them invoked, unfavorable to the interests of the State ; yet neither that officer whose duty it is " to take care that the laws be faithfully execu-

ted," nor he who takes care of its fiscal interests and relations, nor he who is the advocate of its legal rights, is notified of the proceedings; and a judgment is rendered, in effect annulling two acts of the Legislature, and declaring the State not to be the owner of property it claims to hold as such, and ordering it to be sold by the commissioners of a bankrupt corporation, when the Legislature has ordered it be sold by the treasurer, without a single state officer having been cited.

It is contended, and so decided by the court below, that the commissioners are the representatives of the State, and of all the creditors of the company; this is to a certain extent true, but it does not prove, when the interests of two creditors come in collision, that one of them may withdraw temporarily the authority from the common representative, so far as he is concerned, and then attack his adversary through the agent, without notice, and thus obtain a judgment greatly advantageous to himself, and injurious to his opponent. In the case of *Saul* v. *His Creditors* (7 Mart. N. S. 447), it was held that when there is a contest between creditors, as to the manner in which property is to be sold, the syndics cannot interfere, nor do any act by which the rights of one party may be weakened or strengthened. 3 Martin, 278. From a petition in the record not served, we find that there are many other creditors of this corporation ready to contest the claims of the State, and if we should decide that they can do so, without notice to the constitutional and legal officers of the State, it might soon be stripped of all its rights, and left remediless.

It is easy to see that many questions are to arise in the liquidation of the affairs of this corporation, the most prominent of which are:

1. What authority the Legislature of the State has, to declare the property of an individual or corporation forfeited, and to become vested in the State, either *ex delicto*, or *ex contractu*, by a mere legislative declaration, without judicial interposition.

2. What rights the State has upon the property, acquired by the corporation subsequently to the mortgage given in 1839, in consequence of a clause being inserted that future property shall be affected by the hypothecation, when the act of the

Legislature did not require the insertion of such a clause, and the stock holders did not authorise it, so far as the evidence now discloses the facts.

3. What rights the State acquired by the act of forfeiture, and taking possession of all the property of the rail road company with its tacit consent ; and further, what responsibilities it has incurred by assuming the control of its affairs, and making the company its agent.

4. Whether the petitioners have not lost their privilege as undertakers entirely, by not recording their *contract in time;* and whether or not, the mortgage they possibly have, is not inferior to that in favor of the State.

5. In case the rail road and appurtenances, and other property be sold by the commissioners, in what manner and proportion the proceeds are to be distributed among the creditors.

Doubtless other questions will arise, but with those we see before us, it is best to have the interested parties cited in some manner, and we must remand the case for that purpose, and for a new trial, when all interested in the questions shall have been notified.

It is ordered and decreed that the judgment of the District Court be annulled and reversed, and that the cause be remanded for a new trial, with directions that the treasurer of the State, the attorney general, and attorney for the State in the parish of East Feliciana, be notified of the proceedings commenced by the plaintiffs, and that they pay the costs of this appeal.